UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAX AGENCY, INC., a MICHIGAN
CORPORATION,

       Plaintiff,                            Case No. 11-15343
                                                HON. GERSHWIN A. DRAIN

vs.

E.R.J. INSURANCE GROUP, INC. d/b/a
AMERICAN HERITAGE INSURANCE SERVICES,
A FLORIDA CORPORATION,

       Defendant.

AND

E.R.J. INSURANCE GROUP, INC. d/b/a
AMERICAN HERITAGE INSURANCE SERVICES,
A FLORIDA CORPORATION,

       Counter-Plaintiff,

vs.

FAX AGENCY, INC., a MICHIGAN
CORPORATION,

       Counter-Defendant,
_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [#20], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
[#34] AND DENYING PLAINTIFF'S MOTION TO COMPEL [#32]

**I.    INTRODUCTION**

Presently before the Court is Defendant's Motions for Summary Judgment filed on March 20, 2013. Also before the Court are Plaintiff's Motion for Summary, filed on April 19, 2013, and Plaintiff's Motion to Compel, which was filed on April 12, 2013. These matters are fully briefed and the Court concludes that oral argument will not aid in their resolution. Accordingly, pursuant to E.D. Mich. L.R. 7.1(f)(2), these matters will be resolved on the briefs. For the reasons below, Plaintiff's Motion for Summary Judgment is GRANTED. Defendant's Motion for Summary Judgment and Plaintiff's Motion to Compel Production are both DENIED.

**II.    PROCEDURAL AND FACTUAL HISTORY**

*1. Motion for Summary Judgment*

Plaintiff/Counter-Defendant FAX Agency, Inc. and Defendant/Counter-Plaintiff AHIS entered into the Contract on May 15, 2003. The Contract provided that Plaintiff is to provide broker services in return for a per-contract fee on GAP policies sold by GMAC and its agents. Defendant manages and administers the GAP product provided by Allstate Dealer Services. Two types of contracts were provided to consumers under this agreement. One contract provided a full refund if cancelled within 90 days and no refund if cancelled after that time. The second contract provided a full refund if cancelled within 30 days and a pro rata refund after that time. During the life of the contract refunds were issued on 131,083 Program contracts, 21,533 for full refunds.

The dispute is whether Plaintiff is owed Broker Fees on Program contracts cancelled by the consumer that resulted in either a full or partial refund. The Contract does not

explicitly provide an answer to this question. The only language addressing Broker Fees is as follows:

> 2) Broker Fee: As compensation for Broker Services Provided AHIS will pay FAX as follows:
>
> For every Program contract or Program contract remittance received by AHIS, AHIS shall pay FAX a $6.50 per Program contract Broker Fee in U.S. Currency no later than the end of the [sic] each month in which the business was processed and paid. The Program business shall be processed by AHIS as received.

Compl. Ex. A, at 2. Addendum #2, executed on February 8, 2005, changed the Broker Fee to a variable rate depending on the length of the Program contract. Addendum #3, executed on March 2, 2010, expanded the agreement to include business acquired by Customer Service Center, Inc. and reduced Plaintiff's fees in certain states. Aside from the rate, the addendums did not alter the language of the Broker Fee provision, nor its applicability to the dispute.

Plaintiff filed a Complaint on December 6, 2011, alleging that Defendant breached the Contract by refusing to pay $624,719.29 in commission fees on cancelled contracts. Plaintiff also suggested that further fees could be owed due to business produced by Customer Service Center, Inc., but did not specify the amounts. On January 19, 2012 Defendant filed an Answer that denied this charge and counter-claimed Plaintiff breached the Contract by failing to perform Broker Services. As a result, Defendant claimed Plaintiff was unjustly enriched by improperly receiving $869,142.50 in commission fees on contracts with 60 month terms and receiving $3,823,056.71 in Net Override fees.

Defendant asked for leave to amend its Answer to add the affirmative defense of statute of limitations on March 25, 2013. The next day Plaintiff asked for leave to amend their Complaint, claiming that Defendant owed an additional $103,957.50 for unpaid

commission fees on 15,544 contracts and $35,042.00 due to incorrect calculation of Broker Fees. Both of these requests were denied due to the prejudice that would be suffered by the opposite party and the untimeliness of the requests.

### 2. Motion to Compel

Plaintiff served Defendant with its Third Request for Production on February 12, 2013. Relevant to this Motion is Request No. 28, which states:

> Please produce any and all documents relating to any control process utilized to make sure all contracts that FAX Agency Inc. was supposed to be paid were coded in your GAP processing system to correctly pay FAX Agency, Inc., including but not limited to any audit of, review, or communications about the control process, findings, and/or corrective actions.

Pl.'s Mot. to Compel Ex. A.

When Defendant did not respond, Plaintiff sent another request on March 28, 2013. Pl.'s Mot. to Compel Ex. C. Defendant responded to this request with the following objection:

> The defendant objects to the request because: (A) The term "control process" is vague. (B) The question seeks irrelevant information not reasonably calculated to lead to admissible evidence, because the plaintiff's allegations are related whether [sic] the parties' contract entitled the Plaintiff to commissions for cancelled contracts, not as to whether all contracts were properly accounted.
> Subject to the objection, the defendant answers: Assuming that "control process" is synonymous with a verification process after initial entry, as suggested by the request's references to "make sure" and "audit or review," the defendant answers: no verification process specific to FAX's commissions occurred.

Pl.'s Mot. to Compel Ex. B. Plaintiff did not pursue this matter further until filing this Motion.

In the interim, Plaintiff deposed Mrs. Courtney Criado Wanderon, former Vice President of AHIS, on April 8, 2013. During her deposition Mrs. Wanderon referred to the existence of an audit report that Plaintiff believed was responsive to Request No. 28. Specifically, she stated that an, "internal control audit team that came in from Home Office

-4-

and chose about eight agencies to audit the setups, and the splits, and the calculations," and that "GMAC Insurance/FAX Agency was one of the agencies . . . ." Pl.'s Mot. to Compel Ex. D, at 52:9-14. Mrs. Wanderon also indicated she saw "a Word document of findings related to the audit . . . ." *Id.* at 53:15-21. According to Plaintiff, Defendant's counsel promised to "follow up" with Plaintiff after the deposition was completed. Plaintiff requested the audit report again on April 9 and April 11. On April 12, 2013, Plaintiff filed a Motion to Compel seeking discovery of the audit report as well as attorney's fees and costs.

In Response, Defendant stated that the referenced audit report is in the custody of its parent Allstate. Defendant refused to produce the audit report because it is not in their control and it does not include data from FAX Agency. Included in the Response is the Affidavit of Timothy Meerbott, Senior Division Manager of Allstate Dealer Services' Claims Department, Miami Division, who reviewed the data in the audit report and stated that FAX Agency was not one of the agencies used in the report.

### III. LAW AND ANALYSIS

### A. Motion for Summary Judgment

#### *1. Standard of Review*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See*

*Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence

supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### *2. Whether the Contract is Ambiguous*

Whether contract language is clear or ambiguous is a question of law. *Collins v. National General Ins. Co.*, 834 F. Supp. 2d 632 (E.D. Mich. 2011). If the Court decides that the contract is ambiguous, then the meaning of the contract becomes a question of fact. *See 51382 Gratiot Ave. Holdings, LLC v. Chesterfield Development Co.*, LLC, 835 F. Supp. 2d 384, 391 (E.D. Mich. 2011). However, if the language is clear, then the meaning of the contract is a question of law that may be properly decided at the summary judgment stage. *See Aqua Group LLC v. Federal Ins. Co.*, 620 F. Supp. 2d 816 (E.D. Mich. 2009). So, the first inquiry is whether the language of the Broker Fee provision is ambiguous. If not, then the Court may decide the meaning of the Contract.

A contract is ambiguous if it is subject to two reasonable interpretations. *See Citizens Ins. Co. of America v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688 (6th Cir. 2006). "[I]f a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear." *Raska v. Farm Bureau Mut. Ins. Co. of Michigan*, 412 Mich. 355, 362 (1982). A dispute over the meaning of a contract alone does not make the contract ambiguous. *See 51382 Gratiot Ave. Holdings, LLC*, 835 F. Supp. 2d at 392. Finally, "[a]n omission or mistake is not an ambiguity." *Zilwaukee Twp. v. Saginaw Bay City Ry. Co.*, 213 Mich. 61, 71 (1921).

Though the parties disagree about the meaning, they both agree that the Contract

language is unambiguous in regards to the cancellation of a Program contract for a full refund. Plaintiff maintained that the lack of a reference to cancellations in the Contract means there is no chargeback if the consumer cancels their contract. Defendant contended that a consumer cancellation for a full refund means that no "Program contract" existed in the first place, thus Plaintiff is not owed a fee. According to Defendant, cancellations for a partial refund are Program contracts, but the Contract is ambiguous as to whether a Broker Fee is owed. Defendant argues the Contract's silence on this issue is ambiguous because, "no statute or rule of law automatically resolves the silence." Def.'s Mot. for Summ. J. at 15. In place of contract language, Defendant argued that the conduct of the parties established pro-rata refunds.

The flaw in Defendant's argument is the assumption that the silence was accidental. Both parties are sophisticated, have a great deal of expertise in the insurance industry, and the knowledge that consumers could cancel Program contracts for a refund. Yet, they did not contract for a return of the Broker Fees earned on cancelled contracts. After years of dealing, and many cancelled Program contracts, the parties still did not address cancellations in any of the addendums entered into during the life of the Contract. Additionally, the Contract expressly states that it is the "final and entire agreement among the parties. . . ." Compl. Ex. A, at 2. The lack of a provision dealing specifically with cancellations reflects the intention of the parties that Plaintiff be paid a Broker Fee on these contracts. The language of the Broker Fee provision is otherwise clear and this Court "will not create ambiguity where the terms of the contract are clear." *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111 (1999).

### 3. Meaning of the Contract

Since the Contract is unambiguous it may be interpreted at the summary judgment stage. When a contract is unambiguous the court looks only to the language of the contract to determine its meaning. *See, e.g.*, *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 604 (1997). "Michigan courts examine contractual language and give the words their *plain* and *ordinary* meanings." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 544 (6th Cir. 2007) (quoting *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503 (Mich. Ct. App. 2007)).

As previously stated, Defendant argued the language of the Contract supports a reading that there is no Broker Fee due on cancelled Program contracts since they did not exist in the first place. Since the consideration paid by the consumer was returned, Defendant claimed the cancellations are actually rescissions. As rescission restores the parties to their original position, Defendant reasoned that no Program contract ever existed in the first place. Additional reasons for this interpretation are that a contrary understanding would incentivize Plaintiff to "churn" contracts that would be cancelled immediately afterwards and Defendant paid Plaintiff for what it produced, so it should not expect payment for cancellations.

Defendant's argument is contrary to a plain reading of the Broker Fee provision. The language of the Contract provides no support for Defendant's assertion that a cancellation is actually a rescission. The Contract only requires a "Program contract or Program contract remittance [be] received by AHIS . . . ." Compl. Ex. A, at 1. Occurrence of that condition earned Plaintiff its Broker Fee. Subsequent cancellation does not alter the fact that Defendant "received" a Program contract. The Court refuses to read into the Contract a provision providing for refunds of fees on cancelled Program contracts when one does

not already exist.

Though the language of the Contract is sufficiently clear, the Court notes that the general rule is that "a broker is deemed to have earned his commission when the seller and purchaser enter into a binding agreement." *Hayman Mgmt. Co. v. Dura Corp.*, 45 Mich. App. 522, 524 (Mich. App. Ct. 1973). Also, a former representative of Defendant noted it was their practice to "either put it [chargeback language] in [a contract] or it would be excluded." Pl.'s Resp. to Def.'s Mot. Ex. G, at 24:8-9. Finally, as noted by Plaintiff, the comparably small Broker Fee owed to Plaintiff suggests Defendant assumed the risk of cancellation.

The remaining two arguments raised by Defendant are similarly unconvincing. First, as Plaintiff points out, the "churn" accusation is misdirected since Plaintiff does not actually solicit consumers directly. Thus, Plaintiff was not in a position to determine whether the consumer would quickly cancel their contracts. Second, Defendant claims that Plaintiff should only be paid for what they produced. Plaintiff should be paid what the Contract demands and that includes cancelled contracts. Besides, Plaintiff "produced" the Program contracts for which a Broker Fee is owed. Payment was based solely on Program contracts "received", not on profit produced for Defendant.

### 4. Modification, Waiver, or Estoppel

Defendant argued that even if the language of the Contract does not support their position, then the conduct of the parties either modified the Contract, waived Plaintiff's right to fees on cancelled contracts, or estopped them from claiming fees. Modification of a

-10-

contract requires mutual consent by the parties involved. *See Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 373 (2003). "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id*. When the alleged modification occurred through conduct of the parties a waiver analysis is required. *Id*. at 374. Thus, the analysis Defendant's modification and waiver arguments is the same.

The course of conduct of the parties must demonstrate through "clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms, the requirement of mutual agreement has been satisfied." *Id*. Additionally, "whereas an original contract's written modification or anti-waiver clauses do not serve as barriers to subsequent modification by express mutual agreement, the significance of such clauses regarding the parties' intent to amend is heightened where a party relies on a course of conduct to establish modification." *Id*.

Defendant offered several pieces of evidence to demonstrate the mutual intent of the parties to either modify or waive the Broker Fee provision. Defendant pointed to Plaintiff writing four checks to repay fees on cancelled Program contracts. For one of these checks, Defendant also provided an invoice that stated, "Management Fee Chargebacks due to GAP Cancellations." Def.'s Resp. to Pl.'s Mot. for Summ. J. Ex. 27. In addition, correspondence between Mr. Basilico and an AHIS representative is included where Mr. Basilico acknowledged that Plaintiff owed Defendant for the fees paid on cancelled Program contracts. *Id*. at Ex. 28. Finally, in its Reply Defendant quoted at length from the deposition testimony of Mr. Phelps who stated that Plaintiff was aware of the chargebacks,

but did not act because they did not want to jeopardize the Contract.

The evidence offered by Defendant does not meet the heightened standard set by *Quality Standard*. First and foremost, the anti-waiver clause of the Contract is very clear. Compl. Ex. A, at 3 ("Any failure of delay by either party to exercise any right under this Agreement shall not operate to waive that right nor shall any single or partial exercise of any right preclude any other of further exercise of any right under this Agreement."). The evidence of Plaintiff's conduct does not demonstrate any desire to waive the actual anti-waiver provision, so the clause is still valid. The invoice and correspondence may show a willingness on Plaintiff's part to accept chargebacks for that specific month, but the anti-waiver provision expressly states that a party's failure to exercise their rights at one time will not act to waive those rights in the future. Awareness of that provision is reflected in Mr. Phelps testimony that Plaintiff voluntarily waited to exercise their rights to receive payment for cancelled contracts. While Plaintiff's awareness of its rights and failure to act on them may act as a waiver in other circumstances, it does not when there is an anti-waiver clause in effect.

Defendant's other evidence is similarly unconvincing. The four checks written by Plaintiff do not establish an intent to never be paid fees on cancelled contracts in the future since the checks only amounted to $1,198.24, which accounted for .1% of the disputed amount. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 17. Plaintiff offered a reasonable explanation for why the checks were written. *Id.* at 16-17 ("FAX representatives were told that the four bills were a result of a reconciliation of two systems and the amounts billed were overpayments."). Former representatives of Defendant testified that they did not believe the contract was modified by conduct. *Id.* at 15-16. It is also worth noting that,

"waiver of a substantial right . . . is a matter of contract which requires a consideration." *Babcock v. Pub. Bank*, 366 Mich. 124, 135 (1962). The parties undoubtedly appreciated the value of the cancelled contracts, so it would be surprising if Plaintiff did not receive any consideration for "waiving" the right to receive payment on them. Based on this evidence, it is clear there was not mutual assent to modify the Contract or waive any provision.

Defendant's estoppel argument also fails. Estoppel requires establishing: 1) Plaintiff's acts or representations induced Defendant to believe the cancellation provision would not be enforced, 2) Defendant justifiably relied on this belief, and 3) Defendant was prejudiced by a result of its reliance that the cancellation provision would not be enforced. *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 204 (2008). Defendant does not provide any information related to its reliance on Plaintiff's representations nor does it say how it was prejudiced, thus it has not established estoppel.

Finally, Defendant's argument that the anti-waiver clause is no longer valid is also rejected. Defendant provided two reasons: the anti-waiver clause was itself waived and the anti-waiver clause only applies to executory waivers. As was already discussed, there is absolutely no evidence whatsoever that the parties had any intention to waive the anti-waiver clause. The only law cited for Defendant's second argument is a District of Columbia case relating to a land-lord tenant dispute. Aside from the fact that the case is from a different jurisdiction, it is also from a landlord-tenant dispute, one quite different from the interactions of two sophisticated parties. *Quality Products*, the case Defendant claimed to be controlling authority on the waiver issue in their summary judgment motion, does not make a distinction between executory and non-executory waivers. What *Quality Products* does say is that an anti-waiver clause is given greater effect when, as is the case here, one

party is trying to establish waiver through party conduct. *Quality Products & Concepts Co.*, 469 Mich. at 374.

### *6. Statute of Limitations Defense*

Defendant argued that part of Plaintiff's claim is barred by the statute of limitations. Under Michigan law, the statute of limitations for a breach of contract claim is six years. MCL 600.5807(8). Since the Complaint was filed on December 5, 2011, Defendant claimed that Plaintiff is precluded from recovery for any fees accrued before that time. Based on this date, Defendant claims that $163,682.19 of damages must be excluded.

The statute of limitations is an affirmative defense that must be raised in response to a pleading. FED. R. CIV. P. 8(c)(1). Defendant first raised their statute of limitations defense in a March 25, 2013 Motion to Amend, over a year after filing their Answer. "Generally, a failure to plead an affirmative defense, like statute of limitations, results in the waiver of that defense and its exclusion from the case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). While there is an exception to this rule when the party is granted leave to amend their answer, Defendant's Motion to Amend was already denied due to potential prejudice to Plaintiff and its untimeliness. *Id*. The same reasons for denying leave apply here. The time to raise this defense has passed, so Defendant's statute of limitations defense is waived.

### *7. Damages*

The appropriate amount of damages owed to Plaintiff is the last remaining issue. In their Complaint, Plaintiff stated that AHIS withheld at least $624,719.29 in cancelled contracts. This number was calculated based on data files produced by Defendant. In a

subsequent Motion to Amend, Plaintiff requested an additional $138,999.50. Since the request to amend was denied, the additional sum may not be awarded to Plaintiff. While Defendant disputed liability, it never disputed the amount of money withheld from cancelled contracts. Defendant even referred to this number in their Response without raising any concerns over its validity. *See* Def.'s Resp. to Pl.'s Mot. for Summ. J. 4. The only objection raised by Defendant was to Plaintiff's request for the additional $138,999.50 that this Court already denied. Since there is no dispute about the amount, Plaintiff is awarded $624,719.29 in damages for the withheld Broker Fees dating back to 2003.

**B. Motion to Compel**

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Defendant asserts that the audit report does not include any data from FAX Agency. In support, Defendant offers the Affidavit of Timothy Meerbott. The Affidavit is sufficient to demonstrate the audit report is not relevant, so it is beyond the scope of discovery. Thus, it was appropriate for Defendant to refuse to produce the audit report.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [#20] is DENIED.

Plaintiff's Motion for Summary Judgment [#34] is GRANTED.

Plaintiff's Motion to Compel Production [#32] is DENIED.

SO ORDERED.

Dated: May 31, 2013

                                          S/Gershwin A. Drain
                                          GERSHWIN A. DRAIN
                                          UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 31, 2013, by electronic and/or ordinary mail.

                                      S/Tanya Bankston
                                      Deputy Clerk